IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BANK OF THE WEST,<br><br>  Plaintiff,<br><br>v.<br><br>NEWELL K. WHITNEY; CONNIE T. WHITNEY; KYLE R. WHITNEY; TANIA W. CLARK; Newell and Connie Whitney, Trustees of THE NEWELL AND CONNIE WHITNEY TRUST; FOX RUN, LLC; NC WHITNEY ALPINE, LLC; NC WHITNEY EQUIPMENT, LLC; FR-1AB, LLC; FR-2AB, LLC; FR-3AB, LLC; FR-4AB, LLC; FR-5AB, LLC; FR-6AB, LLC; FR-7AB, LLC; FR-8AB, LLC; FR-9AB, LLC; FR-10AB, LLC; FR-11AB, LLC; FR-12AB, LLC; FR-AIRLINE, LLC; FR-CCW, LLC; FR-CW, LLC; FR-DORSET, LLC; F.R. MIDRAIL, LLC; FR-SSTAX, LLC; FR-NAUVOO, LLC; FR-EAGLEWOOD, LLC; NC WHITNEY, LTD; FR-CASTLE, LLC; FR-CW LOTS, LLC; CENTRAL PROPERTY MANAGEMENT, LLC; AND NKW, LLC,<br><br>  Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br><br>Case No. 2:17-CV-210 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendants' Motion to Dismiss. For the reasons discussed below, the Court will dismiss Plaintiff's first two causes of action as impermissible claim-splitting and will dismiss the remaining causes of action for lack of standing, thereby granting Defendants' Motion to Dismiss.

I. BACKGROUND

Plaintiff Bank of the West ("BOTW") is a national banking association located in California. BNB Development, LLC ("BNB") executed several promissory notes that were

1

secured by deeds of trust in favor of BOTW, encumbering real property located in Wasatch County, Utah. BNB's obligations under these loan agreements were guaranteed by Newell Whitney, Willie J. Whitney, and Brent D. Butcher. BNB eventually defaulted on the amounts owed, and on September 30, 2010, BOTW filed an action to collect in the Third Judicial District Court of the State of Utah.[1] Two years later, on November 26, 2012, the court entered a final judgment of $2,050,000 in favor of BOTW and against BNB, Newell Whitney, and Willie Whitney.

On August 31, 2015, BOTW filed its first federal lawsuit ("BOTW I") in the United States District Court for the District of Utah to collect on its judgment.[2] BOTW named Newell Whitney, Connie Whitney, and twenty-seven entities as defendants and asserted five claims against the defendants: (1) Imposition of Resulting Trust; (2) Reverse Piercing of the Corporate Veil; (3) & (4) Fraudulent Transfer; and (5) Declaratory Judgment Re: Debt from Whitney Trust to Whitney Limited Partnership. BOTW alleged that Newell Whitney had paid nothing toward the judgment and Newell Whitney claimed to own no assets that could be applied to payment of the judgment.

In November 2016, six months after the deadline for amending the pleadings and adding parties, BOTW moved to amend its complaint, seeking, among other things, to bring additional fraudulent transfer claims and add new defendants. In a Memorandum Decision and Order Denying Motion to Amend, the BOTW I court found:

> Plaintiff should have been aware of the facts that [gave] rise to its proposed Amended Complaint months before it sought leave to amend. Plaintiff has failed to show such neglect was excusable and has failed to offer an adequate

---
[1] *Bank of the W. v. BNB Dev., LLC, et al.*, Case No. 100918717 (3d D. Ct. Utah 2010).
[2] *Bank of the W. v. Whitney, et al.,* No. 2:15-cv-622 CW (D. Utah filed Aug. 31, 2015).

2

explanation for the delay. Indeed the depositions that prompted review of the documents were postponed twice at Plaintiffs request.[3]

The BOTW I court denied the motion, concluding that it would be prejudicial to the defendants to allow leave to amend so late in the case.

BOTW then contacted the BOTW I defendants and asked if they would stipulate to an amendment despite the ruling against BOTW. If not, BOTW said it would file a separate lawsuit asserting the new claims. Regarding the proposed amended complaint, BOTW said, "Obviously, the claims set forth in the attached Complaint are factually interrelated with the facts at issue in the pending litigation. For that reason, we don't think it makes sense–for *any* of the parties–to litigate these claims in separate lawsuits."[4] The defendants refused to allow the amendment, so "BOTW then filed its Complaint in this action, asserting essentially the same claims it had proposed to bring into the First Action."[5] Defendants now move to dismiss the Complaint.

## II. STANDARD OF REVIEW

"It is well-settled that a plaintiff may 'not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed.'"[6] "In particular, the court must ensure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of

---

[3] *Id.* at Docket No. 122, at 3. The Order also noted that "[f]act discovery ha[d] concluded and the deadline for filing dispositive or potentially dispositive motions [was] fast approaching." *Id.* at 4.
[4] Docket No. 73-5.
[5] Docket No. 86, at iv.
[6] *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 990 (10th Cir. 2002) (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977)).

complaints."[7] However, "from the standpoint of policy and logic, the fact that a plaintiff's motion to amend was denied on the ground of disruptiveness should have no bearing on the question whether plaintiff should be permitted to assert such claim in a separate lawsuit."[8] Instead, the question before the Court is whether the party bringing claims in a separate suit is engaging in impermissible claim-splitting.[9]

> The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit. By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste "scarce judicial resources" and undermine "the efficient and comprehensive disposition of cases."[10]

Therefore, "related claims must be brought in a single cause of action," or they may be dismissed.[11]

The doctrine of claim-splitting is analyzed "as an aspect of res judicata,"[12] or claim preclusion. Since the Court is determining the preclusive effect of a case before the federal court, the federal law of claim preclusion applies.[13] In the Tenth Circuit, "claim preclusion requires: (1)

---

[7] *Zisumbo v. Ogden Reg'l Med. Ctr.*, No. 1:12-CV-91 TS, 2012 WL 4795655, at *3 (D. Utah Oct. 9, 2012) (quoting *Hartsel*, 296 F.3d at 990) (internal quotation marks omitted).
[8] *Hartsel*, 296 F.3d at 989 (internal quotation marks omitted).
[9] *Zisumbo*, 2012 WL 4795655 at *3.
[10] *Katz v. Gerardi*, 655 F.3d 1212, 1219 (10th Cir. 2011) (quoting *Hartsel*, 296 F.3d at 985).
[11] *Id.* at 1214. "District courts have discretion to control their dockets by dismissing duplicative cases." *Id.* at 1217; *see also Hartsel*, 296 F.3d at 987 n.1 ("It is clear that a motion to dismiss based on improper claim-splitting need not—indeed, often cannot—wait until the first suit reaches final judgment.").
[12] *Katz*, 655 F.3d at 1217.
[13] *See Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683, 687 (10th Cir. 1992) (citing, inter alia, Restatement (Second) of Judgments § 87, at 314 (1982) ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court."). In Utah the claim preclusion elements "are 'virtually identical' to the federal rules, so it is of no practical consequence whether we apply Utah or federal rules . . . ." *Haik v. Salt Lake City Corp.*, 2017 UT 14, ¶ 9, 393 P.3d 285 (citing *Oman v. Davis Sch. Dist.*, 2008 UT 70, ¶ 28 n.5, 194 P.3d 956)).

a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits."[14] "Put another way, the doctrine of claim preclusion prevents 'the parties or their privies from relitigating issues that were or could have been raised in' an earlier action."[15] Additionally, "the test for claim splitting is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit."[16] Therefore, because the Court assumes that BOTW I resulted in a final judgment for the purposes of its claim-splitting analysis, it need only consider the final two prongs of the claim preclusion test.

### III. DISCUSSION

"With respect to BOTW's eighth, ninth, tenth, eleventh and twelfth claims for relief, filed in this action, BOTW has considered the advantages of prosecuting these claims, and has decided to voluntarily dismiss them. Thus, these claims are no longer at issue."[17] Thus, the Court will only discuss claims one through seven.

A. BOTW'S FIRST AND SECOND CLAIMS FOR RELIEF

  *1. Identity of the Causes of Action*

The Tenth Circuit "adopted the transactional approach of the Restatement (Second) of Judgments to determine what constitutes a 'cause of action' for res judicata purposes."[18] This approach provides, "[a] final judgment extinguishes all rights of the plaintiff to remedies against

---

[14] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1202 (10th Cir. 2000) (quoting *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir.1999)).
[15] *Id.* (quoting *Clark v. Haas Grp., Inc.*, 953 F.2d 1235, 1238 (10th Cir. 1992).
[16] *Katz*, 655 F.3d at 1218.
[17] Docket No. 86, ¶ 43.
[18] *King v. Union Oil Co., of Cal.,* 117 F.3d 443, 445 (10th Cir. 1997) (citing *Petro management Corp. v. Acme–Thomas Joint Venture,* 835 F.2d 1329, 1335 (10th Cir.1988)).

the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."[19] In considering each cause of action, "[w]hat constitutes a 'transaction' or a 'series' is to be determined pragmatically considering whether the facts are related in time, space, origin, or motivation, and whether they form a convenient trial unit."[20]

In both BOTW I and this case, the first and second claims for relief are almost identical. The claims in both cases seek to impose a resulting trust on the assets and/or to reverse pierce the corporate veils of Defendants Fox Run, the Fox Run Subsidiaries, the Whitney Trust, the Whitney Limited Partnership, the Whitney Limited Partnership Subsidiaries, and Central Property Management (hereafter collectively referred to as the "Whitney Entities"). The only differences are in the wording of the headings and the recognition of a managerial role held by Kyle Whitney.[21] BOTW does not deny that these causes of action are the same as those in BOTW I, but argues that they were necessary to re-allege because, if BOTW is to recover any relief from the Whitney Entities, BOTW must demonstrate that the property held by the Whitney Entities is actually the property of Newell Whitney.

While BOTW's alter ego theory may be necessary for recovery, this does not change the fact that the first two causes of action in both cases are based on the same alleged facts arising

---

[19] *Id.* (citing *Lowell Staats Mining Co., Inc., v. Phila. Elec. Co.*, 878 F.2d 1271, 1274 (10th Cir.1989)).
[20] *Id.*
[21] BOTW I's heading for the first cause of action is "Imposition of a Resulting Trust" and the second cause of action is "Reverse Piercing the Corporate Veil," while the headings in this case are "Imposition of Resulting Trust–Whitney Entities," and "Reverse Piercing the Corporate Veil/Alter Ego–Whitney Entities." Beyond this, Paragraph 88 of the Complaint mentions the assignment of a managerial role to Kyle Whitney and states that Newell Whitney exercised control notwithstanding that assignment.

6

out of the same time, space, origin, and motivation, and therefore, arise out of the same transactions. Further, the causes of action in the two cases not only form a convenient trial unit, but splitting them would result in multiple judges or juries considering the same issues, weighing the same facts, and analyzing the same laws in a duplicative act that would waste scarce judicial resources and open the rulings to inefficient and potentially inconsistent dispositions. This presents multiple problems and is a major reason why claim-splitting is most often not allowed. BOTW recognized this when it stated, "Obviously, the claims set forth in the attached Complaint are factually interrelated with the facts at issue in the pending litigation. For that reason, we don't think it makes sense–for *any* of the parties–to litigate these claims in separate lawsuits."[22]

For these reasons, the Court finds that Plaintiff's first two claims for relief in this case stem from the same transaction as the first two claims in BOTW I and, therefore, satisfy the identity of the cause of action requirement for claim preclusion.

   2. *Identity of the Parties or Their Privies*

Most of the Defendants BOTW seeks to impose its alter ego theory on in this case are the same Defendants BOTW sought to impose its alter ego theory on in BOTW I. In regards to those Defendants, it is not necessary to establish privity since the "identity of parties" requirement is established by the fact that they are the same Defendants named in both cases. It is also unnecessary for the Court to decide whether Kyle Whitney and Tania Clark, Newell's children and two of the defendants not named in BOTW I, are in privity to any defendants from BOTW I with respect to the first two claims since these first two causes of action do not involve them, except to state their positions. However, the Court must consider whether NC Whitney Alpine,

---

[22] Docket No. 73-5.

LLC, and NC Whitney Equipment, LLC, the other two defendants not named in BOTW I, are in privity with any defendants in BOTW I, in order to determine whether the first two claims are also precluded as to these defendants.

Unfortunately, "[t]here is no definition of 'privity' which can be automatically applied to all cases involving the doctrines of res judicata and collateral estoppel."[23] Courts do agree that "even where a plaintiff has already sued one or more parties liable for a particular loss, the plaintiff ordinarily is entitled to bring another suit against a new defendant, or defendants, based on the same loss."[24] "But an exception to this rule applies when there is 'privity' between the defendant(s) bound by the first suit and the new defendant(s) named in the second suit."[25] The "determination of identity between litigants for the purpose of establishing privity is a factual question . . . ."[26] "[A]t a minimum, privity requires a showing that the parties in the two actions are really and substantially in interest the same."[27]

The Tenth Circuit provided examples of circumstances where the courts have found privity, including a corporation and its officers and directors,[28] a subsidiary and its "controlling" parent,[29] a corporation and its agent,[30] and a "subsidiary assignee" and its sister subsidiary and parent.[31]

---

[23] *Lowell*, 878 F.2d at 1274–75.
[24] *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1240 (10th Cir. 2017).
[25] *Id.*
[26] *Lowell*, 878 F.2d at 1276.
[27] *Lenox*, 847 F.3d at 1241 (internal quotation marks omitted).
[28] *Id.* at 1240 (citing *Fox v. Maulding*, 112 F.3d 453, 459–60 (10th Cir. 1997)).
[29] *Id.* at 1240–41 (citing *Robinson v. Volkswagonwerk AG*, 56 F.3d 1268, 1275 (10th Cir. 1995)).
[30] *Id.* at 1241 (citing *Lowell*, 878 F.2d at 1276).
[31] *Id.* (citing *Circle v. Jim Walter Homes, Inc.*, 654 F.2d 688, 689, 692 (10th Cir. 1981)).

In this case, Defendant NC Whitney, Ltd. is a defendant in both cases and is referred to in the Complaint as the "Whitney Limited Partnership." "The Whitney Limited Partnership is also the sole member . . . of defendants NC Whitney Alpine, LLC and NC Whitney Equipment, LLC," which BOTW refers to, along with a few other entities, as the "Whitney Limited Partnership Subsidiaries."[32] Further, BOTW alleges in the Complaint that "[a]s the general partner of the Whitney Limited Partnership, Newell Whitney also exercises control over the Whitney Limited Partnership and the Whitney Limited Partnership Subsidiaries."[33] With the two new defendants listed as subsidiaries of NC Whitney, Ltd., along with the allegations that Newell Whitney is controlling these subsidiaries through the parent company NC Whitney Ltd., the relationship formed is the subsidiary and "controlling" parent relationship the Tenth Circuit previously found to be in privity. BOTW admits that there is a connection between these companies and Newell Whitney, but argues that this does not determine privity.

In *Lenox v. Medtronic*, the court held:

> Lenox was entitled to pursue its § 2 monopolization and attempted monopolization claims under the theory that Defendants, together with MSD USA, are a single entity for antitrust purposes, and to prove the elements of those claims based on the collective conduct attributable to the enterprise as a whole. However, if Lenox prevailed in establishing that Defendants and MSD USA were acting as a single enterprise, it would necessarily also establish privity between Defendants and MSD USA for purposes of claim preclusion. And because the remaining requirements of preclusion are satisfied, Lenox's claims in this case are barred.[34]

---

[32] Docket No. 1, ¶ 68.
[33] *Id.* ¶ 89.
[34] *Lenox*, 847 F.3d at 1246. Similarly, in *Robinson*, plaintiffs lost a products liability case against a subsidiary and then brought a second products liability claim against the subsidiary's parent, alleging a controlling relationship between the two. The *Robinson* court concluded that "[i]f true, . . . this 'near alter ego' relationship would be sufficient to establish 'privity' between the two corporations such that Volkaswagen AG is entitled to assert the previous judgment as a bar to the claim now asserted." 56 F.3d at 1275. This "supports the

9

Similar to *Lenox*, BOTW is entitled to pursue its claims under the theory that the Whitney Entities are alter egos of Newell Whitney. However, if BOTW prevailed in establishing that these entities, specifically the two new entity defendants, are alter egos of Newell Whitney and are therefore acting as a single enterprise, BOTW would necessarily also establish privity for the purposes of claim preclusion. Therefore, the Court finds that the subsidiaries, NC Whitney Alpine, LLC and NC Whitney Equipment, LLC, are in privity with the "controlling" parent NC Whitney Ltd. (and therein Newell Whitney as the defendant allegedly in control of NC Whitney Ltd. and its subsidiaries). With this finding, all three requirements for claim preclusion are satisfied, and the Court finds that BOTW's first two claims for relief in this case are barred as impermissible claim-splitting.

B. REMAINING CAUSES OF ACTION (THREE THROUGH SEVEN)

With the dismissal of claims one and two, which asserted BOTW's theory for imposing liability, the Court must now consider whether BOTW has standing to pursue its remaining claims.

To establish standing, a plaintiff must prove (1) "an injury that is (2) 'fairly traceable to the defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.'"[35] Where a party fails to carry its burden of establishing standing, the court must dismiss for lack of jurisdiction.[36]

---

proposition that if the parties were functionally or 'nearly' acting as one, then they are in privity, such that a final judgment against one bars a subsequent action against the other for the same injury." *Lenox*, 847 F.3d at 1241.
[35] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).
[36] *Id.* at 560.

In order for the injury in this case to be fairly traceable to Defendants under claims three through seven, BOTW depends on its allegations of alter ego and reverse veil piercing in claims one and two. However, with the dismissal of BOTW's first two claims, BOTW is left without a fairly traceable causal connection between the injury of Newell Whitney's failure to pay and the remaining defendants. Without this connection, BOTW is unable to impose liability on the remaining defendants through the allegations in claims three through seven. Without the ability to impose liability, BOTW cannot obtain the relief sought. BOTW recognized the possibility of this outcome when it stated,

> While the relief sought in this action is completely distinct from the relief sought in the First Action, an essential element of the claims alleged here is that the property (belonging to Fox Run, the Whitney Trust, the Fox Run subsidiaries, and NC Whitney) is, in fact, Newell Whitney's property . . . . BOTW's debtor is [Newell] Whitney, but the transfers were made by Fox Run Whitney Entities. Accordingly, *a prerequisite to obtaining the relief sought in this action is proving*–either under the resulting trust and/or alter ego theories–that Whitney, and the Whitney companies that transferred or encumbered the property at issue here, are one-and-the-same.[37]

Therefore, with the dismissal of the first two claims as impermissible claim-splitting, the court finds that BOTW lacks standing to pursue its remaining claims and, therefore, dismisses claims three through seven without prejudice

IV. CONCLUSION

In addition to the Court's findings regarding claim-splitting and standing, the Court agrees that "Defendants should not bear the burden of Plaintiff's untimeliness by being forced to

---

[37] Docket No. 86, at xv (emphasis added). BOTW also stated, "BOTW recognizes that, in the event that the First Action concludes first (which is likely), the Court's decision on BOTW's resulting trust and alter ego/reverse piercing claims *will be given preclusive effect in this action*. At that point, it will no longer be necessary to "assume" a final judgment on these claims, and if BOTW is unsuccessful on these claims, that ruling would be binding in this action, *which should then be dismissed*.) *Id.* at 19 (emphasis added).

relitigate the same facts and claims in two . . . separate lawsuits."[38] Further, allowing these separate cases to proceed before multiple judges or juries presents the exact problems for the courts that Federal Rule of Civil Procedure 42 and the case law regarding claim-splitting were meant to prevent.

It is therefore

ORDERED that Defendants' Motion to Dismiss (Docket No. 73) is GRANTED. Plaintiff's first and second claims for relief are dismissed as impermissible claim-splitting, and Plaintiff's remaining claims are dismissed without prejudice for lack of standing.

DATED this 10th day of October, 2017.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[38] Docket No. 93, at v.